OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Justine Michael, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

Northwest Ohio Bar Association v. Noble.

[Cite as Northwest Ohio Bar Assn. v. Noble (1992),
Ohio St.3d    .]

Attorneys at law -- Misconduct -- Two-year suspension --
     Violation of Disciplinary Rules in handling of two
     bankruptcy cases -- Engaging in conduct involving
     dishonesty, fraud, deceit or misrepresentation --
     Continuing multiple employment where employment may
     adversely affect professional judgment on behalf of client
     -- Unauthorized communication with party represented by
     another lawyer -- Conduct adversely reflecting on fitness
     to practice law -- Neglect of a legal matter entrusted --
     Failure to preserve identity of client funds.

(No. 91-2003 -- Submitted February 18, 1992 -- Decided
September 2, 1992.)

     On Certified Report by the Board of Commissioners on
Grievances and Discipline of the Supreme Court, No. 90-51.

     Relator, Northwest Ohio Bar Association, filed a complaint
charging respondent, John D. Noble, with multiple violations of
the Code of Professional Responsibility stemming from his
handling of two bankruptcy cases.  The matter was heard by a
panel of this court's Board of Commissioners on Grievances and
Discipline ("board").  The record and stipulations disclose the
following facts:

                    The Walter Bankruptcy

     On March 18, 1987, Noble filed a Chapter 12 bankruptcy
petition on behalf of Jimmie Walter, a farmer.  Noble then
sought to obtain credit for Walter to buy seed and fertilizer
for his 1987 crops.  Noble contacted three suppliers:
Glenn-Garno Seeds, Prattville Fertilizer and Grain Co., Inc.
("Prattville") and Falor Farm Center, Inc.  All three agreed to
supply Walter with fertilizer and seed, extending an
approximate total of $170,000 worth of credit.  As "input
creditors," these suppliers were entitled to first priority
liens on the 1987 crops from certain specified acreage.
Moreover, pursuant to the bankruptcy court's order, each time
Walter received proceeds from the sale of these crops, the
input creditors were to receive ninety percent and Walter ten
percent, on a check-by-check basis.  Under Noble's agreement

with Walter, Noble was to get one half of Walter's share, i.e., five percent of the proceeds, in payment of attorney fees.

Noble agreed to disburse the crop proceeds and file Uniform Commercial Code liens to protect the input creditors' security interest. Noble perfected the liens, for which service he billed Prattville $250.

A Disclosure Statement and Plan, prepared by Noble and relied upon by the input creditors, showed that the input creditors were to receive a priority lien on eight hundred acres of corn and five hundred fifty-eight acres of soybeans. However, Walter was participating in a government program that limited his 1987 corn acreage to approximately four hundred seventy-five acres. At the hearing Noble claimed ignorance of this limitation; he said that, in preparing the disclosure, he had relied on Walter's statements as to how much Walter intended to plant.

On August 26, 1987, Noble signed a waiver of the input creditors' priority in the 1987 crops in favor of the United States Department of Agriculture. The input creditors never authorized this.

On September 28, 1987, the Metamora Elevator Co. issued a $30,492.46 check to Walter for his 1987 soybean crop. Noble did not disburse ninety percent to the input creditors and ten percent to Walter, as the court order required. Instead, he disbursed $14,848 to John Deere Credit Corporation ("John Deere") and $1,559.40 to Lyons L.P. Gas without the knowledge or approval of the input creditors. Noble also disbursed $1,524.62 to himself, even though he had neither sought nor obtained the bankruptcy court's approval of his fee. Finally, Noble disbursed $1,489.85 to Walter and $11,070.59 to the input creditors.

Noble followed a similar pattern with two subsequent checks. On October 23, 1987, the Commodity Credit Corporation issued a check for $26,547.39. Noble disbursed $13,154.68 to the input creditors, gave Walter $10,000, and paid himself $3,392.71, again without seeking the court's permission. (Moreover, Noble's self-payment far exceeded the five percent his fee agreement called for.) On November 5, 1987, Metamora Elevator Co. issued a check for $4,806.95. Although Walter was entitled to only ten percent, Noble disbursed $697.01 to Walter.

At the hearing, Noble tried to justify his improper disbursement of the September check by asserting that the September check might have been from the sale of 1985-1986 stored crops, not 1987 crops subject to the input creditors' liens. Had that been so, the input creditors would have been entitled to no portion of the September check. The $10,000 payment to Walter from the October check was intended to reimburse Walter for the allegedly erroneous September disbursements to the input creditors. However, an affidavit prepared by Noble and signed by Walter in December 1987 indicates that the September check represented 1987 crop proceeds; moreover, Noble so stated a year later during a deposition of Walter.

Noble also testified that, had he not paid John Deere from the September check, John Deere would have repossessed Walter's equipment, making it impossible for Walter to get the 1987 crop in; thus, paying John Deere was in the input creditors'

interest. Nevertheless, Noble admitted that he failed to inform the input creditors that he intended to pay John Deere or to obtain their permission to do so.

When the input creditors discovered that Walter had not planted as many acres as his April disclosure statement had said he would, they hired a lawyer, Jan Stamm, to represent their interests. Although Noble knew that the input creditors had hired Stamm, he directly contacted Prattville's manager twice. Noble stipulated that this conduct violated DR 7-104.

### The Cook Bankruptcy

In 1987, Mr. and Mrs. Norman Cook hired Noble to handle their Chapter 11 bankruptcy. Noble filed the Cooks' bankruptcy petition. On January 2, 1989, with the bankruptcy action still pending, Norman Cook died.

On April 1, 1989, Mrs. Cook liquidated the family farm and its equipment. The Cooks owed the Farmers Home Administration ("FmHA") over $200,000, secured by a lien on the equipment; however, FmHA agreed to allow the equipment's sale and accept the proceeds, less funeral costs, in settlement. Accordingly, the bankruptcy court issued an order permitting Mrs. Cook to sell all property and equipment free of lien.

The proceeds from the equipment's sale totaled $14,330.11. Noble subsequently received a check in that amount, made out to him and Mrs. Cook, dated April 3, 1989. Noble deposited this check into his trust account and used $4,517.75 to pay the funeral expenses, leaving $9,812.36.

However, instead of settling FmHA's claim with this money, Noble used it to pay personal expenses. Moreover, he commingled his own funds into the trust account in an attempt to cover his defalcations. Noble stipulated that this conduct violated DR 1-102(A)(4), 1-102(A)(6) and 9-102.

To Mrs. Cook's detriment, Noble delayed the disposition of her bankruptcy case while trying to replace the misappropriated funds. He did not file a Plan and Disclosure Statement with the bankruptcy court until January 1990, and when he did file it, he initially failed to provide for the United States Trustee's fees. Moreover, he never filed an Application for Settlement of Indebtedness with FmHA, as required. Not until June 11, 1990, did Noble finally send FmHA a check for $9,812.36.

Mrs. Cook hired new counsel in June 1990; counsel filed her settlement application with FmHA in October. By then, however, Mrs. Cook had collected over $70,000 in death benefits, which she was required to disclose on the application. An FmHA representative informed new counsel that the $9,812.36 settlement proposal was no longer acceptable. Noble stipulated that his delay violated DR 6-101 and harmed Mrs. Cook financially.

In mitigation, Noble testified that his son committed suicide in 1978 and that Noble had been under extraordinary emotional and financial stress ever since. Noble's emotional state deteriorated to a point where "I hated the world * * *." He had serious marital problems and overextended himself financially. Finally, in 1989 or 1990, a court entered a $900,000 judgment against Noble for injuring another person in an auto accident in 1987.

The panel found that, in the Walter bankruptcy, Noble

violated DR 1-102(A)(4) (dishonesty, fraud, deceit, or mispresentation), 5-105(B) (continuing multiple employment where employment may adversely affect professional judgment on behalf of client), and 7-104(A)(1) (unauthorized communication with party represented by another lawyer). In the Cook bankruptcy, the panel found Noble violated DR 1-102(A)(4), 1-102(A)(6) (conduct adversely reflecting on fitness to practice), 6-101(A)(3) (neglect of a legal matter entrusted to him) and 9-102(A) (failure to preserve identity of client funds). The panel recommended a two-year suspension. The board made the same findings and recommendation.

Weaner, Zimmerman, Bacon, Yoder & Hubbard and Stanley J. Yoder; and James P. Spriggs, for relator.

John D. Noble, pro se, and Charles W. Kettlewell, for respondent.

Per Curiam. We concur in the board's findings and recommendation. John D. Noble is suspended from the practice of law in Ohio for two years. Costs taxed to respondent.

Judgment accordingly.

Moyer, C.J., Sweeney, Holmes, Douglas, Wright, H. Brown and Resnick, JJ., concur.